# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| YOLANDA MARTIN SINGLETON | CIVIL ACTION NO.3:20-cv-00625 |
| VERSUS | |
| STATE OF LOUISIANA, LOUISIANA DEPARTMENT OF WILDLIFE AND FISHERIES AND THE LOUISIANA WILDLIFE AND FISHERIES COMMISSION | JUDGE BRIAN JACKSON AND MAG. RICHARD BURGEOIS |

## AMENDED COMPLAINT

**NOW INTO COURT,** comes Plaintiff, Yolanda Martin Singleton, a person of full age of majority and a resident of and domiciled in the Parish of East Baton Rouge, State of Louisiana who respectfully represents that:

### Nature of the Case

1.

This action arises from Louisiana Department of Wildlife and Fisheries and the Louisiana Wildlife and Fisheries Commission's violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. §1981 and FMLA retaliation violation under FMLA.

2.

This action is filed to provide Yolanda Martin Singleton relief for unlawful discrimination in her employment, and all as a result of her race and gender. Singleton seeks monetary and equitable remedies for her past and future wage and/or earnings losses, her employment benefits, retirement benefits, attorney fees, costs, interest from the date of judicial demand until paid, mental

1

and emotional distress and such other relief as the law may allow, including but not limited to such punitive damages as allowed by statute and/or jurisprudence.

## Jurisdiction and Venue

3.

Plaintiff's claim involves a federal question from Title VII, FMLA retaliation violation under FMLA and 42 U.S.C. §1981.

4.

Venue is proper with this Court because the claims arise out of events, acts and/or omissions of which a substantial part occurred in this Middle District.

## Parties

**5.**

Plaintiff, Yolanda Martin Singleton, during the time of the issues of concern in this matter, was and is a resident of and domiciled in and a citizen of Ascension Parish, State of Louisiana. During the time of the issues of concern in this matter, Plaintiff was an employee under the definition of Title VII and 42 U.S.C. §1981, and defendants were her employer.

6.

Plaintiff timely filed a charge of discrimination to the EEOC alleging violations of Title VII as a result of race and gender discrimination and retaliation. The EEOC issued plaintiff a Notice of Right to Sue dated June 19, 2020 and which was received on June 23, 2020, which is attached hereto and made a part hereof as Plaintiff's Exhibit #1. Plaintiff timely filed this Complaint within 90-days of her receipt of the Notice of Right to Sue.

**Factual Allegations**

7.

In October 2008, Plaintiff was hired by the Louisiana Department of Wildlife and Fisheries (hereinafter, sometimes referred to as "LDWF") as the Land Acquisition attorney, Attorney 3. In 2012, Plaintiff was promoted to Deputy General counsel. In 2016, Plaintiff was promoted to Executive General Counsel. Plaintiff also served as the General Counsel to the Louisiana Wildlife and Fisheries Commission (sometimes, hereinafter referred to as "LWFC"), which was a full-time position. Plaintiff was the only African American and only woman on the legal team.

8.

Following an organizational restructuring, all attorneys functioning inside and outside of headquarters were reallocated and directed to the Baton Rouge office. Likewise, all attorneys reported to Plaintiff.

9.

On or around August 2016, then General Counsel, Fred Whitrock, resigned at the first staff meeting in which Plaintiff served as Executive General Counsel. The timing of Whitrock's resignation was clearly in line with the juxtaposition of reporting and submission to Plaintiff's leadership, an African American female.

10.

As a result of internal administrative turmoil and multiple resignations in the Department, there were several vacancies which needed to be filled. However, the Department Secretary, Charlie Melancon and then Acting Chief of Staff, Toby Gascon would not allow me to fill the positions with candidates of my choosing. Each time I requested to fill the vacant attorney

3

positions, my requests were denied. As a result, we were short staffed and all of the legal responsibilities fell to me without sufficient attorney or support staff. My former counterparts, who were all white men like Randy Meyers and Patrick Banks never had an issue filling attorney or staff positions like the Plaintiff. Those comparators requests were routinely approved by the Secretary and Chief of Staff.

11.

On or around November 23, 2016 and after seeking approval for the vacant legal positions, Toby Gascon, then acting Chief of Staff to the Secretary was so angry he retaliated against Plaintiff by subjecting Mrs. Singleton to a hostile work environment. Gascon threatened to terminate Plaintiff's employment and otherwise subjected Plaintiff to an adverse employment action such as nit picking on job performance issues and unnecessarily watching her time immediately following the requests to fill vacant positions without his political influence and coercion.

12.

Then on November 28, 2016, Gascon called Plaintiff in to his office and berated her, yelling in a tone that was aggressive, assaulting, and abusive. Gascon also referred to me with the racist term "coon." Additionally, Gascon retaliated against Plaintiff for refusing to allow him to make his suggested political appointments for job vacancies. Other white males on the executive team, such as Randy Meyer and Patrick Banks were not subjected these types of restrictions when it came to hiring their staff.  Also, Gaston held an unprofessional relationship with another employee whom Plaintiff supervised, a Land Specialist by the name of Angela Thomas.  As a result, Gascon would deal with the Plaintiff harshly whenever his love interest did not get her leave approved timely.

13.

On or about November 29, 2016, Plaintiff received a call from Director of Human Resources, Pamela Harrel, advising Plaintiff that she was being placed on administrative leave and not to report to work until an investigation was complete regarding being called a "coon" above. Although the incident involved Gascon and Plaintiff, Gascon was not placed on leave or disciplined. Yet, Plaintiff remained on administrative leave for 306 hours or 38 days. Plaintiff was paid for only 270 hours of the 306 hours taken. During said administrative leave, Gascon berated and intimidated other employees. Gascon went on a "witch hunt" of the Plaintiff looking for every possible way to discredit her and make her look like a bad employee, although she was not. Gascon examined Plaintiff's performance records, leave requests, and calendar meetings, all for the purpose of seeking grounds to terminate Plaintiff. While on leave, Plaintiff filed a grievance challenging the adverse employment action. Plaintiff was subsequently reinstated, but not reimbursed for the 306 hours of unpaid leave or for any attorney's fees associated with the action.

14.

In December 2016, Louisiana Department of Wildlife and Fisheries' Secretary, Charlie Melancon resigned. He was replaced by interim Secretary Patrick Banks. Banks reinstated all of the employees that Gascon previously terminated such as Wendy Brogden, Marilyn and Terri LaRose, both white females. Those employees were fully reinstated and reimbursed for attorneys' fees and unwarranted administrative leave. Plaintiff, however, was not and remained on administrative leave partially without pay and partially charging against her annual leave bank for which she was not reimbursed.

15.

As a prerequisite to return to employment, LDWF offered that Plaintiff accept a demotion to Deputy General Counsel while a white male that she hired as Deputy General Counsel was

detailed to her position of General Counsel, while the other reinstated employees were reinstated to their previously held positions.  The white male had already been promoted to an interim General Counsel position by Gascon as retaliation against Plaintiff, the only woman and only African-American to have served as General Counsel for the LDWF. In response, Plaintiff countered with a claim for unlawful termination with the Civil Service Commission. After filing said claim, Plaintiff was allowed to return to her former position, but under a very hostile work environment.

16.

In mid-January 2017, Plaintiff returned to LDWF. The hostile work environment persisted which included working under a dark cloud of unwarranted allegations, rumors, and talks of demotion. There was also a shift in staff loyalty after being out for two months and continued threat of termination.

17.

In September 2017, Plaintiff received a positive performance evaluation from the Secretary. Plaintiff continued to work to restore her relationships with staff and continued to meet the challenges of being short-staffed as Plaintiff was down 4 attorneys.

18.

In January 2018, Secretary Montoucet asked the executive team to rate and evaluate his performance. Plaintiff indicated in her response that she admired his ability to supervise and think outside of the box, however, she felt that there was perhaps a generational (and not personal) gap, and further stated that her voice was not heard in the room of all white males, save one.  Plaintiff

replied further, that he did not always respond to the needs of the women in the office or allow them to exercise their full potential.

19.

Secretary Montoucet responded to Plaintiff's welcomed honest critique by distancing himself, with less to little engagement with her even though he was her immediate supervisor. The Secretary's interactions with Plaintiff became very hostile as well. Despite being personally hostile to Plaintiff, the Secretary continued to use her as a token to lobby the Legislative Black Caucus on a licensing bill that could not pass without the support of the Legislative Black Caucus.

20.

The deputy General Counsel left for a new job during this same period. As such, Plaintiff's staff was reduced by a total of four attorneys leaving her with only one land acquisition attorney. As before, and as a result of the retaliation from Plaintiff's response to the Secretary's request for critique, Plaintiff was not allowed to fill the vacant attorney positions, and was forced to perform and discharge the duties and work of five attorneys. As a result of being intentionally overworked, Plaintiff's stress caused her to suffer serious health complications in June and July 2018, was ordered to take leave pursuant to the Family Medical Leave Act ("FMLA) leave to deal with the medical and health complications. As a result taking FMLA, Plaintiff was horribly retaliated against by calling and harassing the Plaintiff while out on leave.

21.

Following the end of the 2018 Legislative session, wherein Plaintiff was used as a token, Plaintiff was issued a pre-deprivation notice. Due to my health condition and severe distress, Plaintiff was not in a position to defend the pre-deprivation action, nor could she sustain the continued retaliation and hostile work environment. Furthermore, Plaintiff was also unable to rely

on guidance from the Human Resources or the Civil Service Commission because they both fell in line with the Secretary in an effort to terminate Plaintiff under the direction of Special Counsel to the Division of Administration, and Civil Service Commission which led to Plaintiff's forced resignation executed completely out of duress, a constructive discharge. Plaintiff sought the assistance of the union but could not get assistance.  In fact, Plaintiff could not get accounting to do a payroll deduction for union dues.

22.

Prior to leaving her position, Plaintiff made a public records request for information from the Department to substantiate her contention of being singled out and treated differently from her white male comparators on the executive team. Shortly after the Department responded to her public records request, Plaintiff again received retaliation in the form of another pre-deprivation notice of termination.

**Causes of Action**

23.

Based on the aforementioned, which are all incorporated herein by reference, defendants discriminated against Plaintiff in violation of Title VII and 42 U.S.C. §1981, on the basis of race and gender. Moreover, defendants retaliated against Plaintiff in violation of Title VII and 42 U.S.C. §1981. FMLA retaliation violation under FMLA because she utilized said leave.

**Prayer**

Plaintiff requests a jury trial in this matter.

**WHEREFORE,** plaintiff, respectfully pray that after citation and/or summons are issued and issue joined and due proceedings are had, that there be judgment rendered in her favor and against Defendants, as prayed, for this, to wit:

a.  That Plaintiff, be awarded all back pay, fringe benefits, front pay and other compensation lost as a result of Defendants' unlawful conduct in an amount to be determined by the trier of fact upon trial;

b.  That Defendants such compensatory damages as are determined by the trier of fact upon trial;

c.  That plaintiff, be awarded punitive damages as allowed by law, all reasonable attorneys' fees, litigation expenses, expert fees, and costs, and interest from date of judicial demand until paid and for all recourse available under federal and state laws, rules, and regulations.

Respectfully Submitted,

**LAW OFFICE OF YANCY A. CARTER**

/s/ Yancy A. Carter
YANCY A. CARTER (#24335)
**Law Offices of Yancy A. Carter**
7102 Mohave Hills
P.O. Box 691442
Houston, Texas  77269
Tel. (504) 319-3625
Fax (832) 284-7052
Email: yancycarter@hotmail.com

9